UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. S1-4:08CR100 HEA |
| JEROME LEWIS, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). On May 12, 2008, the Defendant filed a motion to suppress evidence and statements [Doc. #46], and a motion for disclosure (filed under seal). A hearing was held on the pretrial motions on June 9, 2008, and at the conclusion of the proceedings, Defendant requested that the Court allow the matter to remain open to allow counsel adequate time to call additional witnesses. At the Defendant's request, the Court held a supplemental hearing on June 30, 2008. Further, no evidence was presented as to any statements which might be admitted into evidence.

Based upon the evidence adduced at the hearings as well as a review of the written transcripts of those proceedings, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Leo Rice is a Task Force Agent with the Drug Enforcement Administration and is also a Detective with the St. Louis Metropolitan Police Department. On February 6, 2008, he applied for a warrant to search a house at 8523 Tara Lane in St. Louis, Missouri, and to seize drugs, currency, weapons, and drug transaction records. The affidavit sworn to by Det. Rice in support of the

issuance of the warrant before a judge of the Circuit Court of the City of St. Louis stated in pertinent part as follows:

On approximately February 5, 2008, Det. Rice was informed by a detective of DEA's Drug Task Force, that a person, who Rice was investigating, was storing and selling drugs from 8523 Tara Lane in St. Louis, Missouri. Because of this, Rice and other officers set up a surveillance on February 5, 2008 at the above address. The initial surveillance was set up at about 3:30 p.m. on this date. Shortly thereafter, the officers observed a white Chevrolet Lumina driven by a male driver stop in front of 8523 Tara Lane. Shortly thereafter, they observed an individual who they were investigating, Christopher Ollie, come out of 8523 Tara Lane and conduct a hand-to-hand transaction with a male in the Chevrolet Lumina. Specifically, the officers observed Ollie hand the driver of the vehicle a plastic baggie, and the driver hand Ollie an amount of currency. After the transaction took place, the Lumina left the location and was followed by other police officers. Eventually, the driver of the Lumina was confronted in his vehicle ten minutes later in the parking lot of a Ryan's Steak House. The officers, who confronted the male in the Lumina, found a plastic baggie containing six ounces of crack cocaine on the front floorboard of the Lumina. The driver of the Lumina was arrested and told the police officers that he had purchased the cocaine from an individual known as "Thumb" at 8523 Tara Lane. He stated that over the past seven months, he had purchased more than five kilograms of cocaine from "Thumb" at the above address. The driver also told the officers that he had arranged to purchase an additional nine ounces of cocaine from "Thumb" on February 6, 2008 at 8523 Tara Lane. The driver identified a picture of Christopher Ollie as being the person he knew to be "Thumb," who had sold him the cocaine at 8523 Tara Lane.

At about 8:00 p.m. on this same date, February 5, 2008, Rice and other detectives again established a surveillance at 8523 Tara Lane. At 8:35 p.m., the officers observed a silver Grand Prix drive up to the residence. They observed a male get out of the Grand Prix carrying a small yellow bag, and observed the individual to enter the house at 8523 Tara Lane. After five minutes, the male left the house holding the inside of his jacket, as if he were stabilizing something to keep it from falling out of his jacket. Approximately one half hour after this, Det. Rice and the other officers observed a Chrysler Pacifica arrive at the residence and park in the driveway. They observed a male exit the Pacifica and enter the residence. After approximately five minutes, the male exited the residence and drove away. Further, about 15 minutes after this, the officers observed a silver Mercury Marauder drive up to 8510 Tara Lane and park in front of that residence. They observed two males exit this car and walk to 8523 Tara Lane, where they were allowed into the residence. They left after approximately five minutes, entered the Marauder and left the area. Based on the above affidavit, the state circuit judge issued a warrant authorizing Rice and other detectives to search 8523 Tara Lane and to seize cocaine, narcotic substances, U.S. currency, weapons, drug transaction records, and any other instruments of the crime.

After obtaining the warrant, Rice and other officers proceeded to 8523 Tara Lane in order to execute the warrant. Prior to Rice's arrival with the warrant, DEA agents had set up a surveillance at the location. Their surveillance revealed that there was an individual in the house and traffic still going into and out of the house. Because of this, members of the Mobile Reserve Unit of the St. Louis police department were brought in to execute the warrant by making entry into the house. As Rice and members of the Mobile Reserve Tactical Unit were walking up to the house in order to execute the warrant, officers stationed at the rear of the residence observed an individual flee out the

back door of the residence carrying a large bag. These officers chased this person from the residence, and detained him a short distance away from the house. In a duffel bag which the individual had been carrying, the officers discovered five kilograms of cocaine and $35,000 in cash. While this was taking place, Mobile Reserve Officers went to the door of the house, knocked briefly, and made forcible entry into the house. They observed that there was no one in the house, and after the premises had been secured, Det. Rice and other agents and detectives thoroughly searched the house. From the kitchen of the house, they seized empty wrappers which they suspected had contained cocaine. From the front bedroom of the house, they seized a handgun which was concealed underneath the mattress of the bed in that room. Also observed in that room during the search were documents and other items which showed on the face that they belonged to the Defendant, and a cell phone which the agents believed belonged to the Defendant. The Defendant was not on the premises at the time the warrant was executed and was not arrested.

## Conclusions of Law

Warrant to Search 8523 Tara Lane

Probable Cause:

Based on the above affidavit of Det. Rice, the undersigned concludes there was ample probable cause for the issuance of a search warrant. The undersigned makes this conclusion after a thorough review of the facts stating probable cause in the affidavit and the corroboration also contained in the affidavit.

For a search warrant to be valid, it must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime or contraband may be found at the place to be searched. Johnson v. United States, 333 U.S.

4

10 (1948); Warden v. Hayden, 387 U.S. 294 (1967). The manner in which probable cause is determined is the same in both probable cause for arrest and probable cause for a search warrant. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 176 (1949). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context--not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, probable cause in an affidavit "must be weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Illinois v. Gates, supra at 232. Probable cause may be based on the totality of the circumstances present. In order to show probable cause for the issuance of a search warrant, all that must be shown is a "fair probability" that contraband or evidence of a crime would be found at the premises to be searched. See Illinois v. Gates, supra. It is also clear that information obtained from unproven sources may be sufficient to support the search warrant if the information is adequately corroborated. See Illinois v. Gates, supra; see also United States v. Briley, 726 F.2d 1301 (8th Cir. 1984) (anonymous tip from crime stopper's hotline is sufficient information upon which to create probable cause when information is corroborated).

In United States v. Ketzeback, 358 F.3d 987 (8th Cir. 2004), the affidavit for a search warrant was based on an untested informant and excluded information from the affidavit that would poorly reflect on the informant's reliability. Further, the corroboration of the informant was largely information that might otherwise be termed as innocent or innocuous. In addition, another part of

the corroboration was that the defendant had been convicted of a drug violation and was on probation for the violation. In upholding the validity of the affidavit and the corroboration for the affidavit, the Court stated as follows:

> Second, the supplemental affidavit would show that the CI had recently witnessed the alleged dealer's sales, that he was able to give a description of the drugs and their packaging, and that he knew that Ketzeback had recently encountered police in a cemetery. These are detailed allegations that go beyond a "casual rumor circulating in the underworld," Spinelli v. United States, 393 U.S. 410...Moreover, the deputies corroborated the alleged dealer's name, address, and the details of the cemetery encounter. Cf. Tyler, 238 F.3d at 1039; United States v. Buchanan, 167 F.3d 1207, 1211 (8th Cir. 1999) (concluding that omissions, although problematic, did not destroy probable cause partly because the information was validated through independent corroboration of innocent details). It is true, as the district court observed, that this corroborated information was publicly available and established primarily that the CI knew Ketzeback. Nevertheless, independent corroboration of even innocuous facts makes it more likely an informant is telling the truth about incriminating ones, and corroboration of innocent behavior can provide the basis for establishing probable cause.

United States v. Ketzeback, 358 F.3d 987, 991, 992.

In United States v. Reivich, 793 F.2d 957, an untested informant was held to be sufficient to support probable cause. The information held sufficient in Reivich was that two individuals of unknown reliability had provided information to the police that the defendant was their source of cocaine, and gave the general location where he lived and provided a phone number for Reivich at that location. Thus, only innocuous details were available to corroborate the information that the defendant was dealing drugs from the house, and the general area to which the informants had been followed. In upholding the probable cause, the Court stated as follows:

> The theory connecting reliability and corroboration is that an informant who is correct about some things more likely will be correct about critical unverified facts . . .and it is not necessary to a finding of reliability that corroboration extend to illegal activity as well as to innocent details.

793 F.3d 957, 960, 961.

6

In <u>United States v. Allen</u>, 297 F.3d 790 (8th Cir. 2002), the informant, who had no prior record of reliability, told the agents that the informant and the defendant were involved together in the production of methamphetamine, had purchased pseudoephedrine the night before, and that the defendant had materials used in the production of methamphetamine stored in his house. He described the defendant's house, told them what cars were parked out front, and told them the name of the owner of one of the vehicles, and said the defendant was a felon. The only information verified or corroborated of the informant's statements was the address of the house and the owner of one of the vehicles outside the defendant's premises. In holding the affidavit and corroboration sufficient, the Court stated as follows:

> Taken together, we believe the information contained in the search warrant affidavit created a fair probability that law enforcement officers would discover further evidence of illegal drug activity at Allen's residence. The facts that Allen had twenty soda cylinders and thirty lithium batteries in his possession and that he spent the night with Craycraft buying ephedrine/pseudoephedrine pills and looking for anhydrous ammonia establish probable cause to believe that Allen had methamphetamine manufacturing equipment and ingredients at his residence. . . As to Craycraft's credibility, even though he had no record as an informant, the information he provided was sufficiently credible both because his statements were against his penal interest and because the police were able to corroborate some of the information he provided.

<u>United States v. Allen</u>, 297 F.3d 790, 794, 795. See also, <u>United States v. Underwood</u>, 364 F.3d 956 (8th Cir. 2004) (agent could assess informant's credibility because information given in person, location of house given confirmed by independent investigation, and officers had received previous tips from hotline about drug activity at that location).

Based on the above law, the undersigned concludes that Rice's affidavit contains ample probable cause and corroboration for the issuance of a warrant to search 8523 Tara Lane. The undersigned concludes that the affidavit in the case now at bar contains more probable cause and

7

more corroboration than any of the cases cited above. In the case now at bar, although the informant had no record of reliability, he had been observed personally by police officers to make a hand-to-hand cash transaction with a person living at the premises of 8523 Tara Lane. Specifically, he was observed being given a plastic bag in return for cash. Ten minutes later this informant was stopped by police, and the police determined that the plastic bag contained a large amount of crack cocaine. When interviewed about the source of the crack cocaine, the informant admitted that he had purchased the cocaine at 8523 Tara Lane, and that he had purchased over five kilograms of cocaine in that residence over the past several months. Further, he said he had negotiated a large purchase of cocaine from that residence for the next day. This information was specific, as he named the individual from whom the cocaine was purchased, and identified a picture of that individual. In addition, this information was corroborated significantly by the fact that the agents had seen the informant obtain the plastic bag containing cocaine from an individual who came out of 8523 Tara Lane. Thus, the informant's information was specific and corroborated. In addition, the agents set up surveillance on the premises and observed trafficking in and out of the premises that was consistent with the sale of narcotics. Thus, all of the above leads the undersigned to conclude that there was ample probable cause to search the premises at 8523 Tara Lane, and that there was at least a "fair probability" that narcotics and other evidence of drug dealing would be found on the premises.

Normally, agents executing the warrant must comply with the knock-and-announce provisions of 18 U.S.C. § 3104, but when certain circumstances exist, the requirements may be shortened or even ignored. In <u>Richards v. Wisconsin</u>, 117 S.Ct. 1416 (1997), the Court stated as follows:

> We recognized in <u>Wilson</u> that the knock- and- announce requirement would give way "under circumstances presenting a threat of physical violence," or "where police

8

officers have reason to believe that evidence would likely be destroyed if advance notice were given." 514 U.S. at 936, 115 S.Ct., at 1919. It is indisputable that felony drug investigations may frequently involve both of these circumstances.

Richards v. Wisconsin, 117 S.Ct. 1416, 1420, 1421.

In addition, in United States v. Banks, 540 U.S. 31 (2003), the Court stated as follows in holding that officers need not announce their presence in any way when entering pursuant to a search warrant under exigent circumstances:

> In Wilson v. Arkansas, 514 U.S. 927. . . (1995), we held that the common law knock-and-announce principle is one focus of the reasonableness enquiry; and we subsequently decided that although the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or... would inhibit effective investigation of the crime by, for example, allowing the destruction of evidence," Richards v. Wisconsin, 520 U.S. 385. . .When a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a "no-knock" entry. And even when executing a warrant silent about that, if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in.

540 U.S. 31, 36-37.

In Richards v. Wisconsin, supra (a case factually very similar to the case now at bar), police officers went to the door of a motel room armed with a search warrant, with one officer in uniform and another one dressed as a maintenance man. When the officers knocked on the door of the motel room, he stated that he was a maintenance man in order to get into the room. With the chain still on the door, the defendant cracked the door open, viewed the two officers standing in the hallway, and quickly slammed the door closed. The officers then kicked the door in without making a prior announcement of their purpose, and caught the defendant trying to escape through a window. They

9

also found cash and cocaine hidden in bathroom ceiling tiles. In upholding the no-knock entry, the Court stated as follows:

> We agree with the trial court, and with Justice Abrahamson, that the circumstances in this case show that the officers had a reasonable suspicion that Richards might destroy evidence if given further opportunity to do so.
> . . .
>
> The judge who heard testimony at Richards' suppression hearing concluded that it was reasonable for the officers executing the warrant to believe that Richards knew, after opening the door to his hotel room the first time, that the men seeking entry to his room were police. App. 54. Once the officers reasonably believed that Richards knew who they were, the court concluded, it was reasonable for them to force entry immediately given the disposable nature of the drugs. Id., at 55.
> . . .
>
> These actual circumstances--petitioner's apparent recognition of the officers combined with the easily disposable nature of the drugs--justified the officers' ultimate decision to enter without first announcing their presence and authority.

Richards v. Wisconsin, 117 S.Ct. 1416, 1422.

The undersigned concludes that the same circumstances exist in the case now at bar. As a uniformed tactical team approached the premises, they observed an individual, who apparently observed them, flee out of the back door of the house carrying a duffel bag. When this person was stopped, he was found to be carrying drugs out of the house. Thus, as in Richards, supra, the undersigned concludes that the officers in this case reasonably believed that the occupants of the house knew that they were coming and fled from the house in an attempt to destroy or otherwise secrete evidence. Under these circumstances as in Richards, they were justified in immediately entering the house without announcing their presence or purpose. Therefore, the undersigned concludes that the execution of the warrant was lawful.

In United States v. Tracy, 835 F.2d 1267 (8th Cir. 1988), the officers knocked on the door of a dwelling but failed to announce their purpose before breaking down the door to execute the search warrant. In upholding this entry, the Court stated as follows:

> Under these circumstances we agree the officers could have justifiably believed defendants were anticipating their arrival and knew their purpose. Thus announcing their purpose would have been a useless gesture. See Miller, 357 U.S. at 310, 78 S.Ct. 1196; Kulcsar, 586 F.2d at 1286. Further, we also agree with the district court the officers were justified in their actions due to exigent circumstances. Based on their knowledge of this specific drug house and other Jamaican drug houses, the officers could reasonably have believed the announcement would cause evidence to be destroyed before the officers could surmount the anticipated hindrances to their entry and execution of the search warrant.

United States v. Tracy, 835 F.2d 1267, 1270.

The undersigned concludes that in the case now at bar, as in Tracy, supra, there is reason for the officers to believe that the Defendant fled out the back door because he was aware that a uniformed, armed tactical team was approaching the front of the house. In doing so, they could reasonably conclude that it would be futile to announce their presence since individuals inside the house already knew that they were coming. In addition, a reasonable officer would conclude that the Defendant was fleeing out of the back of the house with a large bag in order to conceal or secrete drugs from being found by the police officers entering the front of the house. Therefore, the undersigned concludes that the warrant was lawfully executed.[1]

Therefore, based on all of the above, the undersigned concludes that the warrant to search 8523 Tara Lane was lawful, and the items seized pursuant to the lawful execution of the warrant should not be suppressed.

---

[1] The undersigned also concludes that all of the items seized during the execution of the warrant were items named in the warrant or evidence discovered during the lawful execution of the warrant.

## Conclusion

Therefore, the undersigned concludes that the Defendant's motion to suppress evidence should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion of Defendant to Suppress Evidence and Statements [Doc. #46--dated 5/12/2008] be **denied in part and denied as moot in part.**

Further, the parties are advised that they have until **September 5, 2008** in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

                                         /s/ Terry I. Adelman
                                  UNITED STATES MAGISTRATE JUDGE

Dated this  25th  day of August, 2008.